William W. Serra, J.
This is an appeal from a conviction for driving a motor vehicle at a speed not reasonable and prudent under special hazards in violation of subdivision (c) of section 1180 of the Vehicle and Traffic Law, a traffic offense. At the commencement of the trial the defendant moved for a hearing as to the voluntariness of certain admissions to be used in evidence on the trial of the offense. The admissions were received in evidence.
It was shown that two officers from the New York State Police arrived at the scene of an accident on September 14, 1966, between 12:30 and 1:00 a.m. They found that a one car accident had taken place in which the defendant’s car had struck an abutment off the road. It was a misty night, with poor visibility. The road was currently under repair, particularly as to the shoulders, and was posted to construction dangers and, in addition limited speed to 25 miles per hour in work zones.
One of the troopers questioned stated he determined that no one was injured seriously and that the defendant was the driver of the car. He then took the defendant into the police car “because of light rain.” In the police car he determined by admissions of the defendant, among other things, that the defendant was going between 50 and 60 miles per hour, “ about 55 ” and that the defendant lost control of the car while lighting a cigarette. The shoulder conditions were shown by testimony of the trooper to have been capable of contributing to the accident if the car failed to stay on the paved portion of the highway. Without the admissions, there was insufficient evidence to sustain the conviction. A violation of the statute as to speed greater than is reasonable and prudent under the conditions cannot be based upon the mere happening of an accident. (Matter of Weisinger v. Macduff, 285 App. Div. 607 [1955] ; Matter of Hessney v. Macduff, 284 App. Div. 70 [1954].) At the close of the interrogation which the trooper indicated to have been of about 10 minutes ’ duration a summons was issued for the violation upon which this conviction is based.
The defendant contends that the police car interrogation was custodial, that the defendant was not advised of his rights, that the evidence of such admission should have been excluded and that the conviction should be set aside. The People contend that the admissions were not coerced, and, further that the admissions were the product of nothing more than general on-the-scene questioning of the facts surrounding the violation of law. (Miranda v. Arizona, 384 U. S. 436.)
*474 The court feels that the more important preliminary consideration raised by the facts is whether in the determination of the admissibility of the admissions the rules of custodial interrogation, warnings and waiver set forth in Miranda are applicable at all to traffic infractions. The interrogation here was in part accusatory, and, at least in part, without defining the exact point of change from simple investigation to custody, it was custodial. It was not, from the point in time of such change, simply on-the-scene investigation of witnesses to determine the facts of the situation. As the officer proceeded, he was developing, with directness, with intent of building a case, in his police car, in uniform and at night, a series of evidentiary admissions without the warnings of Miranda. Despite the atmosphere of the situation, however, one could not say this was coercion in the traditional sense. No force, no threats, no promises were made, no overbearing of the will in any sense was applied. Under such circumstances, prior to Miranda, no warnings were required. (People v. Randazzio, 194 N. Y. 147.)
Generally speaking, the rules applied to the prosecution of crimes are applicable to the prosecution of traffic infractions. (People v. Meola, 7 N Y 2d 391, 394; People v. Firth, 3 N Y 2d 472; People v. Hildebrandt, 308 N. Y, 397.) However, section 155 of the Vehicle and Traffic Law provides in part as follows : “ A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment and shall not affect or impair the credibility as a witness or otherwise of any person convicted thereof.” It further provides in part: ‘ ‘ Outside of cities having a population in excess of one million, courts and judicial officers heretofore having jurisdiction over such violations shall continue to do so and for such purpose such violations shall be deemed misdemeanors and all provisions of law relating to misdemeanors except as provided in subdivision two of section three hundred thirty-five of the code of criminal procedure and except as herein otherwise expressly provided shall apply except that no jury trial shall be allowed for traffic infractions. * * * For purposes of arrest without a warrant, pursuant to section one hundred seventy-seven of the code of criminal procedure, a traffic infraction shall be deemed a crime.” The substance of these cases and the statute read together, is then: first, that the general rules of law applying to crimes are to be applied to traffic infractions, insofar as statutory construction, procedures, and general rules of evidence are concerned; second, that-traffic infractions are not crimes and a substantial distinction is to be made between the nature of a traffic infraction and *475 a crime; third, that traffic infractions are treated as misdemeanors for determination of jurisdiction, procedure and manner of arrest only.
In this case a hearing has been held under the provisions of title II-C of part YI of the Code of Criminal Procedure,- and rightly so, under the foregoing rules, as well as under the title itself, since it encompasses indictments, informations, complaints and charges, (813-i), and applies generally to evidence upon the trial of a defendant, (813-f). The question to be determined upon such a hearing is whether admissions are “ involuntary,” and whether a defendant is aggrieved thereby, (813-g).
In the opening paragraph of Miranda, Mr. Chief Justice Warren states (p. 439): “ The cases before us raise questions which go to the roots of our concepts of American criminal jurisprudence: the restraints society must observe consistent with the Federal Constitution in prosecuting individuals for crime. More specifically, we deal with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation and the necessity for procedures which assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself. 5 ’
We are not, then, determining under Miranda whether an admission or confession is “voluntary.” We are determining under the circumstance of custodial interrogation as it is therein defined, whether admissions of a person accused of crime are “ admissible,” bearing in mind the serious consequences of the conviction of a crime to the individual, and his right against self incrimination under the safeguards of the Constitution of the United States. Because of the procedure set up under title II-C, when it becomes apparent on the statutory hearing as to voluntariness that a confession or admission is inadmissible for lack of constitutional safeguards against self incrimination, it will be excluded and suppressed at that time. When, however, the constitutional safeguards do not apply, and we are determining only voluntariness, traditional rules of coercion, actual or inherent, upon the totality of circumstances surrounding-volition will be applied. This is a part of the substantive law of evidence and not a mere procedural facet.
The Legislature of' the State of New York has excluded traffic infractions from the right of assigned counsel at the expense of the State. (County Law, § 722-a.) The Court of Appeals, construing the traffic regulations of the City of New York has held that it is not necessary as a matter of constitutional right to *476 advise a defendant in a traffic case of his right to counsel, even at arraignment. (People v. Felderbaum, 9 N Y 2d 213.) The same holding was reaffirmed and in addition it was held there is no constitutional right to assignment of counsel in a traffic infraction case in New York City in People v. Letterio (16 N Y 2d 307). While these cases do not apply as to advice of right to counsel outside the City of New York under section 699 of the Code of Criminal Procedure, the constitutional question is not affected by the statute. Section 699, moreover, does not require assignment of counsel in indigent traffic cases, a constitutional right in criminal cases. (Code Crim. Pro., § 699, subd. 1, par. f.)
It follows, therefore, that unless traditional rules as to coercion have been violated so as to render a confession “ involuntary ’ ’ as determined by a hearing held under title II-C of part VI of the Code of Criminal Procedure, admissions or confessions are admissible in traffic infraction eases. The special rules for protection against self incrimination laid down in Miranda have no bearing in .such cases as no constitutional issue is involved. Nor is there any statutory requirement for such warnings and waiver in traffic infraction cases at the police apprehension and preliminary interrogation stage.
A further objection was raised that the Magistrate looked at both stubs of the defendant’s operator’s license which he handed her voluntarily when she requested his license. The same reasoning as in People v. Lawton (17 N Y 2d 637) where the police officer was handed a license, would apply here. A defendant cannot voluntarily create error by spontaneously furnishing protected information solely within his control to the Magistrate. Judgment of conviction is affirmed.